UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

CIVIL ACTION NO. 7:21-CV-00017-D

LAMARR ANDRE MCDOW,

      Plaintiff,

v.

FONTELLA MARIE HOLMES,

      Defendant.

**DEFENDANT FONTELLA MARIE HOLMES' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 8(a) & 12(b)(1), (2), (4), (5), and (6)**

# Tables of Contents

INTRODUCTION ................................................................................................................ 1

PROCEDURAL HISTORY .............................................................................................. 3

STATEMENT OF THE FACTS .................................................................................. 4

ARGUMENT ...................................................................................................................... 8

I.   HOLMES' MOTION TO DISMISS PURSUANT TO RULE 12(b)(2), (4), AND
     (5) SHOULD BE GRANTED ...................................................................................... 8

     A.   Standard of Review for Rule 12(b)(2), 12(b)(4) and 12(b)(5) Motions ................ 8

     B.   The Court Lacks Personal Jurisdiction ............................................................... 10

          i.    McDow Failed to Effectuate Proper Service of Process .......................... 10

          ii.   McDow's Purported Process Was Discontinued, Ineffective, and
                Insufficient ............................................................................................... 12

II.  HOLMES' MOTION TO DISMISS PURSUANT TO RULEs 8(a) and 12(b)(1)
     and 12(b)(6) SHOULD BE GRANTED ................................................................... 13

     A.   Standard of Review for Rule 12(b)(6) Motion to Dismiss ................................... 13

     B.   McDow's Claims are Barred by The Applicable Statutes of Limitations ........... 15

     C.   McDow Lacks Standing and Fails to State a Claim Upon Which Relief
          Can Be Granted, and the Court Lacks Subject Matter Jurisdiction, Where
          the Complaint Confirms McDow Did Not Own the Real and Personal
          Property at Issue .................................................................................................. 19

          i.    Standards Governing Standing and McDow's Claims ............................. 20

          ii.   McDow Does Not Own the Properties or the Fixtures on Them .............. 21

          iii.  McDow Does Not Own the Vehicles ....................................................... 23

     D.   McDow's Complaint Fails to State a Claim as to McDow's Personal
          Property, Including Miscellaneous Personal Property, and Fails to Comply
          with Fed. R. Civ. P. 8(a) ..................................................................................... 25

     E.   McDow's Request for Punitive Damages Should Be Dismissed ......................... 27

CONCLUSION .................................................................................................................. 29

CERTIFICATE OF SERVICE ....................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. S. Health Partners, Inc.*,
No. 4:20-CV-00095-M, 2020 WL 6326098 (E.D.N.C. Oct. 28, 2020) ................................... 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................................... 14

*Batts v. Lumbermen's Mut. Cas. Ins. Co.*,
192 N.C. App. 533, 665 S.E.2d 578 (2008) ......................................................................... 24

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) .............................................................................................. 20

*Becker v. N.C. Dep't of Motor Vehicles*,
177 N.C. App. 436, 628 S.E.2d 446 (2006) ......................................................................... 15

*Beeler v. Beeler*,
125 Cal. App. 2d 41, 269 P.2d 949 (1954) ............................................................................ 1

*Campbell v. Wells Fargo Bank, N.A.*,
73 F. Supp. 3d 644 (E.D.N.C. 2014) .............................................................................. 25, 26

*Elliott v. Goss*,
250 N.C. 185, 108 S.E.2d 475 (1959) ............................................................................ 21, 22

*Ferro v. Volvo Penta of the Ams., LLC*,
731 F. App'x 208 (4th Cir. 2018) ....................................................................................... 16

*Francis v. Giacomelli*,
588 F.3d 186 (4th Cir. 2009) .............................................................................................. 14

*French Broad Place, LLC v. Asheville Sav. Bank, S.S.B.*,
259 N.C. App. 769, 816 S.E.2d 886 (2018) ................................................................ 21, 23, 25

*Gardner v. Grp. Health Plan*,
No. 5:09-CV-00152-BO, 2011 WL 1321403 (E.D.N.C. Apr. 4, 2011) ................................. 11

*Gladstone Realtors v. Vill. of Bellwood*,
441 U.S. 91 (1979) ....................................................................................................... 21, 23, 25

*Gould v. Bertie Cty.*,
No. 5:14-CT-3066-FL, 2014 WL 3854076 (E.D.N.C. Aug. 5, 2014) .............................. 26, 27

Case 7:21-cv-00017-D   Document 12   Filed 02/11/21   Page 3 of 37

*Hammonds v. Dep't of Transportation of Div. of Motor Vehicles*,
No. 7:19-CV-72-FL, 2019 WL 5957178 (E.D.N.C. Nov. 12, 2019)............................8, 12, 13

*Hester v. Paramount of Raleigh, LLC*,
No. 5:07-CV-458-H, 2008 WL 6740657 (E.D.N.C. June 19, 2008) ...............................8, 9, 12

*Hudson v. State Farm Ins. Co.*,
No. 5:17-CV-516-FL, 2018 WL 10716543 (E.D.N.C. July 9, 2018) .......................................8

*Hughes v. Young*,
115 N.C. App. 325, 444 S.E.2d 248 (1994).........................................................................23

*S.F. ex rel. J.F. v. Cabarrus Cty. Bd. of Educ.*,
No. 1:12CV560, 2013 WL 4552639 (M.D.N.C. Aug. 28, 2013) ...........................................19

*Jeandron v. Bd. of Regents of Univ. Sys. of Md.*,
510 F. App'x 223 (4th Cir. 2013) ......................................................................................4, 7

*Johnson v. City of Raleigh*,
98 N.C. App. 147, 389 S.E.2d 849 (1990).......................................................................10, 13

*Keels v. Frazier*,
257 N.C. App. 388, 808 S.E.2d 619 (2018).........................................................................8

*Koonce v. Perry*,
53 N.C. 58 (1860) ...............................................................................................................16

*Krebs v. Charlotte Sch. of Law, LLC*,
No. 3:17-CV-00190-GCM, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017)............................20

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)............................................................................................................20

*McNeill v. Minter*,
12 N.C. App. 144, 182 S.E.2d 647 (1971)...............................................................20, 23, 25

*Melvin v. SSA*,
126 F. Supp. 3d 584 (E.D.N.C. 2015)..................................................................................15

*Mid-S. Investments, LLC v. Statesville Flying Serv., Inc.*,
No. 514CV00182RLVDSC, 2016 WL 3958721 (W.D.N.C. July 22, 2016)....................20, 25

*Millers Mut. Ins. Ass'n of Ill. v. Atkinson Motors*,
240 N.C. 183, 81 S.E.2d 416 (1954)....................................................................................15

*Nationwide Mut. Ins. Co. v. Hayes*,
276 N.C. 620, 174 S.E.2d 511 (1970)..................................................................................24

iv

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ........................................................14, 27

*Owens v. Kinsey*,
    52 N.C. 245 (1859) ..............................................................................23

*Peterson v. Nat'l Telecommunications & Info. Admin.*,
    478 F.3d 626 (4th Cir. 2007) ...........................................19, 21, 23, 25

*Philips v. Pitt Cty. Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009) ................................................................3

*Pitts v. O'Geary*,
    914 F. Supp. 2d 729 (E.D.N.C. 2012)...................................................8

*Riggs v. Orkin, Inc.*,
    No. 7:11-CV-5-D, 2011 WL 2417016 (E.D.N.C. June 13, 2011)........28

*Robinson v. Am. Honda Motor Co.*,
    551 F.3d 218 (4th Cir. 2009) ..............................................................13

*Ross v. Washington Mut. Bank*,
    566 F. Supp. 2d 468 (E.D.N.C. 2008)..................................................19

*Salmony v. Bank of Am. Corp.*,
    228 N.C. App. 360, 748 S.E.2d 776 (2013).............................15, 17, 18

*State v. Blake*,
    180 N.C. App. 475, 637 S.E.2d 308 (2006)........................................22

*Stratton v. Royal Bank of Can.*,
    211 N.C. App. 78, 712 S.E.2d 221 (2011).....................................16, 17

*Tinkham v. Hall*,
    47 N.C. App. 651, 267 S.E.2d 588 (1980).......................................9, 12

*Toomer v. Branch Banking & Tr. Co.*,
    171 N.C. App. 58, 614 S.E.2d 328 (2005)..........................................15

*United States v. Garcia*,
    855 F.3d 615 (4th Cir. 2017) ............................................................4, 7

*Veney v. Wyche*,
    293 F.3d 726 (4th Cir. 2002) ..............................................................14

*Vinson v. Smith*,
    259 N.C. 95, 130 S.E.2d 45 (1963)......................................................22

*Wahi v. Charleston Area Med. Ctr., Inc.*,
  562 F.3d 599 (4th Cir. 2009) .......................................................................14, 27

*Wells v. West*,
  212 N.C. 656, 194 S.E. 313 (1937)................................................................20, 25

*Williams v. Hartis*,
  18 N.C. App. 89, 195 S.E.2d 806 (1973).........................................................9, 11

*Wilson v. Commercial Fin. Co.*,
  239 N.C. 349, 79 S.E.2d 908 (1954)...................................................................24

**Statutes**

N.C. Gen. Stat. § 1-52 ...........................................................................................15

N.C. Gen. Stat. § 1-52(1) ...................................................................15, 17, 18, 19

N.C. Gen. Stat. § 1-52(4) .........................................................................15, 17, 18

N.C. Gen. Stat. § 1-52(5) .......................................................................................15

N.C. Gen. Stat. § 1D-15(a) ....................................................................................28

N.C. Gen. Stat. § 20-72(b) .....................................................................................24

N.C. Gen. Stat § 22-2 .............................................................................................22

N.C. Gen. Stat. § 32C-1-110(g)(2)(a) .....................................................................6

N.C. Gen. Stat. § 47-26 ..........................................................................................22

**Rules**

Fed. R. Civ. P. 4(j)(1) ..............................................................................................9

Fed. R. Civ. P. 4(k) ..................................................................................................8

Fed. R. Civ. P. 8(a) .....................................................................................1, 14, 25

Fed. R. Civ. P. 8(a)(2) ....................................................................................*passim*

Fed. R. Civ. P. 12(b)(1).................................................................................1, 13, 20

Fed. R. Civ. P. 12(b)(2) ..................................................................................*passim*

Fed. R. Civ. P. 12(b)(4) ..................................................................................*passim*

Fed. R. Civ. P. 12(b)(5) ..................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .................................................................................................... *passim*

Fed. R. Civ. P. 56(e) ..................................................................................................................10

Fed. R. Evid. 201(b)-(d) ......................................................................................................3, 4, 7

N.C. R. Civ. P. 4(c) ........................................................................................................9, 10, 12, 13

N.C. R. Civ. P. 4(d) ...........................................................................................................10, 12, 13

N.C. R. Civ. P. 4(e) ...........................................................................................................10, 12, 13

N.C. R. Civ. P. 4(j)(1) ..................................................................................................... *passim*

N.C. R. Civ. P. 9(k) ...................................................................................................................28, 30

N.C. R. Civ. P. 41(a) ...............................................................................................................3, 19

## Other Authorities

N.C. Dep't Pub. Safety Offender Pub. Info. (last visited February 7, 2021),
https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderI
D=0694428&searchLastName=mcdow&searchFirstName=lamarr&searchMid
dleName=a&searchDOBRange=0&listurl=pagelistoffendersearchresults&list
page=1.....................................................................................................................................4

*Oak Island Man Facing Charges for Acting as a P.I.*, StarNewsOnline (July 29,
2013),
https://www.starnewsonline.com/article/NC/20130729/news/605043163/WM ......................7

Defendant Fontella Marie Holmes ("Holmes") respectfully submits this Memorandum in Support of her Motion to Dismiss the Complaint filed by plaintiff Lamarr Andre McDow ("McDow") pursuant to Rules 8(a) and 12(b)(1), (2), (4), (5), and (6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This case is the embodiment of the phrase "'[w]hat's yours is mine and what's mine is my own.'"[1] The problem here, however, is that McDow has nothing of his own. Instead, McDow is Holmes' disgruntled, currently imprisoned former fiancé with multiple criminal convictions and an unfortunate desire to pursue meritless litigation against Holmes, whose generosity after winning the Powerball lottery is at the heart of this litigation. McDow contends that, after winning the lottery, Holmes purchased and gave to McDow various items of personal and real property that he subsequently returned to her control via a power of attorney in advance of his return to prison following another criminal conviction. Thus, McDow asserts purported claims for breach of fiduciary duty, conversion, and breach of bailment, with each premised upon the contention that Holmes disposed of or failed to return property that McDow incorrectly asserts he owns. However, McDow's Complaint reveals no legally cognizable claims and instead contains numerous allegations that necessarily defeat his claims.

Procedurally, this action should be dismissed for insufficient process, insufficient service of process, and resulting lack of personal jurisdiction where McDow (1) has demonstrably failed to serve process on Holmes, who was neither in the state nor at the location McDow contends she was served in December 2020, and (2) the process with which McDow contends he served Holmes expired approximately a month prior to service and was not extended by an alias and pluries

---

[1] *Beeler v. Beeler*, 125 Cal. App. 2d 41, 43, 269 P.2d 949, 950 (1954) (citation omitted).

1

summons as required under applicable North Carolina law prior to removal. As a result, process and service are insufficient, and there is no personal jurisdiction over Holmes.

Likewise, McDow's Complaint and related claims suffer from numerous substantive deficiencies. <u>First</u>, McDow's Complaint demonstrates on its face that his claims are barred by the three-year statutes of limitations applicable to each of his claims where they accrued by McDow's own admission between July and September 11, 2017, at the latest, more than three years prior to McDow's filing of this Complaint. Indeed, this Complaint is McDow's *second* attempt to pursue this lawsuit after first filing a substantively identical complaint in Brunswick County Superior Court in October 2018, before voluntarily dismissing it without prejudice in June 2019. As a result of McDow's failure to re-file this action within one year after dismissal, he cannot attempt to "revive" the action now where it is outside the statute of limitations.

<u>Second</u>, McDow's claims fail to state a claim as a matter of law where they are all premised upon the contention that McDow owned the property at issue but the Complaint reveals that the property is titled in the names of (and thus legally owned by) Holmes or individuals other than McDow, who thus lacks standing to pursue claims as to that property and otherwise lacks any claim to it. In short, McDow lacks any right to assert claims against Holmes in connection with her actions related to property that McDow himself never owned and that, if anything, Holmes and third parties *did own*. Accordingly, McDow fails to state a claim as a matter of law and has suffered no injury or harm, thereby depriving the Court of subject matter jurisdiction.

<u>Third</u>, the Complaint fails to comply with Rule 8(a)(2) and Rule 12(b)(6)'s and notice pleading requirements where it fails to describe or otherwise identify the personal property at issue and instead uses vague descriptors such as "Misc. Clothes and Jewelry" and "Tools," which do not provide Holmes notice of the property forming the basis of the claims at issue. The Complaint also

2

relies largely on conclusory allegations regarding purported conduct that cannot form the basis of viable claims.

Fourth, McDow fails to plead or otherwise identify any conduct necessary to support a punitive damages request and instead relies on conclusory allegations, failing to comply with applicable pleading standards. Moreover, where McDow's primary claims fail, his punitive damages request premised on those claims must also fail.

Thus, the Complaint should be dismissed.

## PROCEDURAL HISTORY

On October 19, 2018, McDow filed a Complaint (the "2018 Complaint") in Brunswick County Superior Court, Case No. 18-CVS-1963, asserting claims for breach of fiduciary duty, conversion, and breach of bailment, all substantively identical to the Complaint in this case.[2] On June 25, 2019, McDow voluntarily dismissed the 2018 Complaint pursuant to Rule 41(a) of the North Carolina Rules of Civil Procedure.[3] On September 29, 2020, more than fifteen months later, McDow filed the Complaint in this action, mirroring the claims and allegations in the 2018 Complaint, and a summons was issued. (Dkt. 1-3 & 1-4). On February 4, 2020, Holmes removed the case to this Court by filing a Notice of Removal (Dkt. 1), with a Notice of Filing of Notice of Removal filed with the Brunswick County Superior Court on February 5, 2021. (Dkt. 9-1).

---

[2] A true and accurate copy of that Complaint filed on October 19, 2018 in Brunswick County Superior Court, Case No. 18-CVS-1963 is attached hereto as **Exhibit A** and incorporated by reference. As a public record from the Brunswick County Superior Court, the 2018 Complaint is properly subject to judicial notice on a motion to dismiss. Fed. R. Evid. 201(b)-(d); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (judicial notice of public records). Holmes requests that, for background and context, the Court take judicial notice of the information on the websites, court records, and other public resources referenced in this Brief.

[3] A true and accurate copy of the Rule 41(a) Voluntary Dismissal of the 2018 Complaint is attached hereto as **Exhibit B** and incorporated by reference. Fed. R. Evid. 201(b)-(d); *Philips*, 572 F.3d at 180.

3

## STATEMENT OF THE FACTS [4]

McDow and Holmes were in a relationship from 2012 through August 2017 but were never married. Compl. ¶¶4, 11-13. In November of 2014, McDow was arrested by the Brunswick County Sheriff's Department for trafficking narcotics, for which he was subsequently convicted and sentenced to prison. Compl. ¶6-7, 11, 33 & Compl. Ex. B. McDow has a substantial criminal history and remains in prison for his felony narcotics trafficking conviction. Compl. ¶6-7, 11, 33.[5]

In early 2015, Holmes (individually) won the Powerball Lottery. Compl. ¶6. After winning the lottery, between February 2015 and January 2016, Holmes purchased a number of properties, including several homes. Compl. ¶¶8-9. Holmes also bought real property at 996 Whiteville Road NW, Shallotte, NC 28470, operating as M's Automotive, and other property McDow identifies as "Seventy-seven (77) Acres, Ashe, NC" (collectively, the "Properties"). Compl. ¶9. McDow admits that the Properties are and always have been titled in the name of "Marie Holmes" and not in his name. Compl. ¶¶9-11.

Further, Holmes purchased a number of vehicles for personal or business purposes,

---

[4] Holmes treats the factual allegations in the Complaint as true for purposes of the Rule 12(b)(6) component of her Motion to Dismiss but does not admit, and expressly reserves the right to contest, such allegations. Further, for purposes of the Rule 12(b)(2), (4), and (5) components of the Motion to Dismiss, Holmes is entitled to (and does) introduce evidence contradicting the Affidavit of Service and other evidence filed or otherwise introduced by McDow.

[5] *See also* N.C. DEP'T PUB. SAFETY OFFENDER PUB. INFO., https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0694428&searchLastName=mcdow&searchFirstName=lamarr&searchMiddleName=a&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (last visited February 7, 2021; reflecting incarceration record for "Lamarr A. McDow" and "Lamar McDow"), attached as **Exhibit C**, with redactions, and incorporated by reference. *See* Fed. R. Evid. 201(b)-(d) (court (1) may take judicial notice of information that is generally known in its jurisdiction or that can be accurately and readily determined from "sources whose accuracy cannot be reasonable questioned," and (2) must take judicial notice on the request of a party); *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on state and federal government websites." (citations omitted)); *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) (court may take judicial notice of information on website).

4

including a 1996 Chevrolet truck, two 2015 Peterbilt dump trucks, a 2015 Yamaha Raptor four-wheeler, two Yamaha Banshee four-wheelers, a Toro zero turn lawnmower a 2003 Chevrolet box work van, and a 2015 Dodge tow truck (collectively, the "Vehicles"). Compl. ¶9. McDow admits that all of the Vehicles are and at all relevant times have been titled in the name of "Marie Holmes," her family members, or other third parties–not in his name. Compl. ¶¶9-11. In addition to the Vehicles and Properties, Holmes purchased certain other personal property, some of which was installed at her "M's Automotive" property, including vehicle lifts, auto body paint machines, and other unspecified tools. Compl. ¶¶8-11. McDow also contends that Holmes purchased unspecified "Misc. Clothes and Jewelry" he values at $100,000.00. Compl. ¶9. Despite pleading and admitting that the Properties, Vehicles, and *every single piece of property at issue in this case* other than unidentified miscellaneous clothing and jewelry is titled to someone other than himself, McDow nonetheless contends that Holmes gave him *all* of these pieces of property, which McDow values at $1,453,200.00. Compl. ¶¶8-11.

In January 2016, in light of his then-impending (and now ongoing) imprisonment related to his narcotics conviction, McDow contends that he "executed a general Power-of-Attorney" allowing Holmes to act on his behalf. Compl. ¶11. Beyond conclusory allegations, McDow alleges no facts regarding the substance of the power of attorney or demonstrating that Holmes accepted any obligations under the purported power of attorney. *See generally* Compl.

On July 24, 2017, McDow mailed Holmes a notice terminating the purported power of attorney and any fiduciary relationship associated with the purported power of attorney. Compl.

¶17.[6] Thereafter, in August 2017, McDow and Holmes ended their relationship. Compl. ¶13.[7] As a result, McDow confusingly contends that "*a family member allegedly told Mr. McDow* that Ms. Holmes had given away his personal property" and sold or closed the Properties. Compl. ¶14 (emphasis added). Based on these contentions, McDow suggests that, in July and August 2017, he determined Holmes had given away to third parties or otherwise disposed of the Properties, Vehicles, and other property identified in the Complaint. Compl. ¶¶8-11, 13-15.

As a result, McDow contends that, also in August 2017, he contacted Holmes regarding the status of his property and demanded that "any personal property still in her possession" (if any) be returned or provided to his mother immediately. Compl. ¶¶13-14, 18-19. Declining that demand absent further assurances, on September 11, 2017, Holmes' attorney informed McDow's attorney that Holmes was no longer willing to store McDow's clothing and shoes at her expense and that they would be shipped to McDow's attorney's office if McDow and his mother did not sign an authorization allowing the materials to be provided to McDow's mother. Compl. ¶18 & Compl. Ex. A.

In October 2018, McDow filed his 2018 Complaint, with allegations nearly identical to those in the Complaint here, before dismissing that case on June 25, 2019. *See* Def.'s Exs. A-B. More than fifteen months later, McDow commenced this action, asserting the same causes of action with substantively the same allegations. (Dkt. 1-4). A Civil Summons was issued contemporaneously with the Complaint's filing on September 29, 2020. (Dkt. 1-3). On January

---

[6] While McDow contends that the revocation was not delivered, Compl. ¶17, "[i]f the power of attorney has not been registered in an office of the register of deeds in this State, it may be revoked by … [a] subsequent written revocatory document executed and acknowledged while not incapacitated." N.C. Gen. Stat. § 32C-1-110(g)(2)(a). Indeed, McDow asserted in the 2018 Complaint that the purported power of attorney had been "revoked." Def.'s Ex. A (2018 Compl.), ¶17.
[7] McDow previously contended the relationship ended in May 2017. *See* Def.'s Ex. A (2018 Compl.), ¶13.

6

11, 2021, McDow's attorney, Ira Braswell IV, filed an Affidavit of Service, which is signed by Mr. Braswell personally but which relies on and attaches documents prepared by individuals named Peggy Sue Womble and Bill Hagler, who is referred to variously in the Affidavit and attachments as a "private investigator" or a "Research Investigator." (Dkt. 1-7 at ¶7 & "Investigative Report"). News reports indicate that "Bill J. Hagler" was previously charged in Brunswick County with "two felony counts of acting as a private investigator without a license."[8] Mr. Braswell's Affidavit of Service and an unverified return of service signed by Womble claim that Womble served Holmes with a copy of the Summons and Complaint on December 11, 2020 in Shallotte, North Carolina. (Dkt. 1-5 & 1-7).

However, Holmes was not in the State of North Carolina on December 11, 2020; instead, she was in the State of Washington, where she is a citizen and has resided for several years.[9] Despite counsel's Affidavit of Service based on second-hand information, Womble–posing as someone having lost a dog–delivered the Summons and Complaint to Karen Lee McNeill, another resident of Shallotte, North Carolina who does not live with Holmes and who has no authority to accept service of process on Holmes' behalf.[10] Indeed, as McDow admits through his attorney's affidavit, Holmes is not a resident of North Carolina nor of the home at which she was allegedly served but is instead a resident of the State of Washington. (Dkt. 1-7, ¶¶2-3). Thus, McDow has not properly served Holmes with the Summons and Complaint in this matter to date. *See* Def.'s Exs. E-F.

---

[8] *See, e.g.*, *Oak Island Man Facing Charges for Acting as a P.I.*, STARNEWSONLINE (July 29, 2013), https://www.starnewsonline.com/article/NC/20130729/news/605043163/WM, attached as **Exhibit D** and incorporated by reference. Fed. R. Evid. 201(b)-(d); *Garcia*, 855 F.3d at 621; *Jeandron*, 510 F. App'x at 227.

[9] A true and accurate copy of the Declaration of Fontella Marie Holmes is attached hereto as **Exhibit E** and incorporated by reference.

[10] A true and accurate copy of the Declaration of Karen Lee McNeill is attached hereto as **Exhibit F**.

**ARGUMENT**

## I. HOLMES' MOTION TO DISMISS PURSUANT TO RULE 12(B)(2), (4), AND (5) SHOULD BE GRANTED

### A. Standard of Review for Rule 12(b)(2), 12(b)(4) and 12(b)(5) Motions

"Rules 12(b)(2), (4), and (5), allow for dismissal of a complaint for lack of personal jurisdiction, insufficient process, and insufficient service of process. The court lacks personal jurisdiction over a defendant that has not been served properly." *Hammonds v. Dep't of Transportation of Div. of Motor Vehicles*, No. 7:19-CV-72-FL, 2019 WL 5957178, at *1 (E.D.N.C. Nov. 12, 2019) (citations omitted); *see also* Fed. R. Civ. P. 4(k). When challenged, the plaintiff bears the burden of demonstrating personal jurisdiction via proper service of valid process. *Id.* (citation omitted). A defendant's knowledge of a lawsuit, or act of moving to dismiss it, does not mean the plaintiff effected proper service. *Pitts v. O'Geary*, 914 F. Supp. 2d 729, 734 (E.D.N.C. 2012).

Where a case is removed from state court and the purported service occurred prior to removal of the action, state rules govern the determination as to whether process and service of process were sufficient and accomplished. *Hester v. Paramount of Raleigh, LLC*, No. 5:07-CV-458-H, 2008 WL 6740657, at *1 (E.D.N.C. June 19, 2008) ("It is well established that state law governs whether service of process is perfected prior to removal." (citation omitted)); *see also Hudson v. State Farm Ins. Co.*, No. 5:17-CV-516-FL, 2018 WL 10716543, at *5 (E.D.N.C. July 9, 2018) (applying North Carolina statutes governing process). Under North Carolina law, "[t]here are two potential points of failure in the service of process that may preclude a court from assuming jurisdiction: (1) defects in the summons, *i.e.,* insufficient process; and (2) defects in the manner of service, *i.e.,* insufficient service of said process." *Keels v. Frazier*, 257 N.C. App. 388, 808 S.E.2d 619 (2018).

8

"North Carolina R. Civ. P. 4(j)(1) provides for the proper manner of service in state court upon a person." *Id.* Under that Rule, service by personal delivery may be made on an individual either:

> a. By delivering a copy of the summons and of the complaint to the natural person or by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein.
>
> b. By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute….

N.C. R. Civ. P. 4(j)(1). "Generally, when a statute specifically prescribes the method by which to notify a party against whom a proceeding is commenced, service of the summons and complaint must be accomplished in that manner." *Hester*, 2008 WL 6740657, at *2; *see Williams v. Hartis*, 18 N.C. App. 89, 92, 195 S.E.2d 806, 808 (1973) ("Statutory provisions prescribing the manner of service of process must be strictly construed, and the prescribed procedure must be strictly followed; and, unless the specified requirements are complied with, there is no valid service." (citation omitted)). For example, delivering copies of a summons and complaint to a defendant's family member, when that family member does not reside with the defendant, does not comply with Rule 4 and is insufficient service (i.e., no service at all). *Tinkham v. Hall*, 47 N.C. App. 651, 653, 267 S.E.2d 588, 590 (1980) ("The court found that service upon Roy Barnes was attempted by delivering copies of the summons and complaint to his sister, 'who neither resides at the dwelling house of the defendant Barnes nor was present therein when such papers were delivered to her.' …. The court, therefore, correctly concluded that the service was defective and insufficient to obtain personal jurisdiction over Barnes." (citations omitted)).

Further, under Rule 4(c) of the North Carolina Rules of Civil Procedure, a plaintiff must serve the civil summons and complaint within sixty days after issuance of the summons. N.C. R.

Civ. P. 4(c) ("Personal service or substituted personal service of summons as prescribed by Rules 4(j) and (j1) must be made within 60 days after the date of the issuance of summons."). If a plaintiff is unable to obtain service within sixty days of issuance of the summons, the plaintiff may–within ninety days of issuance of the summons–obtain either an endorsement on the original summons or an alias and pluries summons. N.C. R. Civ. P. 4(d). If the summons and complaint are not served within the original sixty days (or within the properly extended time after obtaining and endorsement or an alias and pluries summons), "the suit is discontinued, and treated as if it had never been filed." *Johnson v. City of Raleigh*, 98 N.C. App. 147, 148–49, 389 S.E.2d 849, 851 (1990) (citing N.C. R. Civ. P. 4(e)).

### B. <u>The Court Lacks Personal Jurisdiction</u>

In this case, McDow (1) had the Civil Summons and Complaint handed to a third party who lacked authority to accept service on behalf of Holmes, and (2) even had such authority existed, the Civil Summons had expired and been discontinued at the time of the purported service. As a result, McDow's purported process and service of process are both insufficient, and the Court therefore lacks personal jurisdiction.

### i. <u>McDow Failed to Effectuate Proper Service of Process</u>

As noted above, to effectuate personal service under North Carolina law, a plaintiff must either deliver the civil summons and complaint (1) directly to the defendant, (2) to someone of suitable age residing in the defendant's usual residence, or (3) to an agent authorized to accept service. N.C. R. Civ. P. 4(j)(1). Here, as set forth in the Affidavit of Service, McDow's attorney contends, apparently without personal knowledge,[11] that third parties–Womble and Hagler–

---

[11] To the extent the Affidavit of Service is made without personal knowledge, the Affidavit should be stricken pursuant to Rule 56(e), and the Court may disregard the Affidavit. Fed. R. Civ. P. 56(e);

coordinated to serve and allegedly served Holmes in person at 505 Highlands Glen Drive, Shallotte, North Carolina on December 11, 2020. (Dkt. 1-7, ¶1-2 & Exhibits). As the Affidavit of Service makes clear, Hagler and Womble's purported identification of Holmes was based upon circumstantial information, such as a picture made available by the media and ownership of (not residency at) the property at issue; it was not based upon any confirmation that the person to whom they provided the documents was, in fact, Holmes. (Dkt. 1-7, ¶4 (discussing photos) & "Investigative Report" attached thereto).

The problem, however, is that neither Womble nor Hagler actually served Holmes. Def.'s Ex. E ¶¶6-9. In fact, it would have been physically impossible for Womble and Hagler to serve Holmes, who was in the State of Washington, where she has resided since 2018, and had been there since December 7, 2020. Def.'s Ex. E ¶¶2-9, 12-14; Def.'s Ex. F ¶¶8-10. Instead, Womble provided a copy of the Complaint and Civil Summons to McNeill, a female who resides with Holmes' father at 505 Highlands Glen Drive. Def.'s Ex. E ¶¶10-11; Def.'s Ex. F ¶¶3-7. Womble did not ask McNeill's name or verify who she was before or after providing the Civil Summons and Complaint to McNeill; rather, Womble pretended that the documents related to a lost dog for which she was allegedly searching and simply handed the folded documents to McNeill before scrambling away. Def.'s Ex. F ¶¶4-7. McNeill is not and has never been authorized to accept service of process or other legal documents on behalf of Holmes. Def.'s Ex. E ¶11; Def.'s Ex. F ¶8.

Because the Civil Summons and Complaint were not personally delivered to Holmes and because Holmes does not reside at 505 Highlands Glen Drive but instead lives in the State of

_____

*Gardner v. Grp. Health Plan*, No. 5:09-CV-00152-BO, 2011 WL 1321403, at *3 (E.D.N.C. Apr. 4, 2011) (striking portions of affidavits not based on personal knowledge).

Washington, McDow failed to effectuate service under Rule 4(j)(1)(a) of the North Carolina Rules of Civil Procedure. N.C. 4(j)(1)(a); *Hester*, 2008 WL 6740657, at *2; *see Williams*, 18 N.C. App. at 92, 195 S.E.2d at 808; *Tinkham*, 47 N.C. App. at 653, 267 S.E.2d at 590. Likewise, because McNeill was never authorized to accept service of process or any other legal documents on behalf of Holmes, she was not "an agent authorized by appointment or by law to be served or to accept service of process," and McDow therefore also failed to effectuate service under Rule 4(j)(1)(b).

Thus, this action should be dismissed for insufficient service of process and a resulting lack of personal jurisdiction. *See Hammonds*, 2019 WL 5957178, at *1 (dismissing action); Fed R. Civ. P. 12(b)(2), (5); N.C. R. Civ. P. 4(j)(1).

      ii.  <u>McDow's Purported Process Was Discontinued, Ineffective, and Insufficient</u>

Even if McDow had otherwise delivered the Complaint and Civil Summons to Holmes, the process and alleged service were also insufficient because the Civil Summons had expired and been discontinued at the time of the purported service. As described above, Rule 4 of the North Carolina Rules of Civil Procedure requires that a summons and complaint be served within sixty days of issuance of the summons or that the plaintiff obtain an endorsement or alias and pluries summons to extend the time for service. N.C. R. Civ. P. 4(c)-(d). Failure to do so results in discontinuance of the suit. N.C. R. Civ. P. 4(e).

Here, McDow filed his Complaint on September 29, 2020, and the Civil Summons was issued the same day. (Dkt. 1-3 & 1-4). The Affidavit of Service asserts that service was accomplished on December 11, 2020–seventy-three days after the Civil Summons was issued and thirteen days *after* it was discontinued (and thus ineffective) for lack of service. (Dkt. 1-3, 1-5, & 1-7); N.C. R. Civ. P. 4(c)-(d). There is no evidence of an endorsement on the Civil Summons or on the purported return of service signed (but not verified) by Womble (Dkt. 1-3 & 1-5) or

elsewhere in the record. (*See generally* Dkt. 1 through 1-10 & 2). Instead, the "endorsement" and "alias and pluries" boxes remain unchecked and unissued. (Dkt. 1-3 & 1-5). As a result, the Civil Summons expired on November 28, 2020. N.C. R. Civ. P. 4(c)-(d). Because the Civil Summons expired, "the suit is discontinued, and treated as if it had never been filed." *Johnson*, 98 N.C. App. at 148–49, 389 S.E.2d at 851 (citing N.C. R. Civ. P. 4(e)). Accordingly, even if the Complaint and Civil Summons had otherwise been delivered to Holmes, the process and purported service of process were insufficient, and this action should be dismissed for insufficient process, insufficient service of process, and a resulting lack of personal jurisdiction. *See id.*; *see also Hammonds*, 2019 WL 5957178, at *1 (dismissing action); Fed R. Civ. P. 12(b)(2), (4), (5); N.C. R. Civ. P. 4(c)-(e).

## II. HOLMES' MOTION TO DISMISS PURSUANT TO RULES 8(A) AND 12(B)(1) AND 12(B)(6) SHOULD BE GRANTED

Even if McDow's claims were not otherwise subject to dismissal for failure of process, failure of service of process, and lack of personal jurisdiction, the Complaint fails as a matter of law to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. First, the allegations and admissions in the Complaint reflect that all of McDow's claims are barred by their respective statutes of limitation. Second, McDow's Complaint alleges and admits on its face that, as a matter of law, the Properties, Vehicles, and other items at issue in this case were titled in the names of, and thus owned by, Holmes and other third parties, thereby negating McDow's claims, depriving him of standing to pursue such claims, and depriving the Court of subject matter jurisdiction. Third, McDow fails to state claims and comply with applicable pleading standards as to the property and his request for punitive damages.

### A. Standard of Review for Rule 12(b)(6) Motion to Dismiss

The purpose of a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to challenge the sufficiency of the plaintiff's complaint, rather than to resolve contested facts or

13

the merits of a claim. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "To survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). To meet this standard, the plaintiff must provide factual detail "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully," as merely showing facts consistent with liability "stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

"[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193 (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" as required by Rule 8." *Id.* (citations omitted); Fed. R. Civ. P. 8(a) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief…")

While "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," it does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Similarly, a court will not "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft*

*Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)), nor will it "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). "Dismissal also is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Melvin v. SSA*, 126 F. Supp. 3d 584, 598 (E.D.N.C. 2015) (citation omitted) (noting that statute of limitations may be raised on motion to dismiss).

### B. McDow's Claims are Barred by The Applicable Statutes of Limitations

McDow's Complaint demonstrates on its face that all three of his purported claims are barred by the applicable three-year statutes of limitations under N.C. Gen. Stat. § 1-52 and must be dismissed.

Under § 1-52 of the North Carolina General Statutes, the statutes of limitations for claims for breach of fiduciary duty, conversion, and breach of bailment are three years. N.C. Gen. Stat. § 1-52(1) (fiduciary duty); *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, 614 S.E.2d 328, 335 (2005) (fiduciary duty); N.C. Gen. Stat. § 1-52(4) (conversion); N.C. Gen. Stat. § 1-52(1) & § 1-52(5) (bailment; depending upon whether breach of bailment contract or tort-based bailment claim);[12] *Millers Mut. Ins. Ass'n of Ill. v. Atkinson Motors*, 240 N.C. 183, 184, 81 S.E.2d 416, 418 (1954) (bailment claims generally sound in tort as negligence claims); *Becker v. N.C. Dep't of Motor Vehicles*, 177 N.C. App. 436, 438, 628 S.E.2d 446, 448 (2006) (reversing finding of purported bailment contract). For claims of breach of fiduciary duty, "the statute of limitations begins to run when the claimant knew or, by due diligence, should have known of the facts constituting the basis of the claim." *Salmony v. Bank of Am. Corp.*, 228 N.C.

---

[12] While is allegations are vague and do not clearly describe his purported claims, to the extent McDow attempts to frame the breach of bailment "claim" as a contract claim arising from a purported bailment agreement, the statute of limitations is the same: three years. N.C. Gen. Stat. § 1-52(1).

15

App. 360, at *6, 748 S.E.2d 776, at *6 (2013) (quoting *Toomer*, 171 N.C. App. at 68-69, 614 S.E.2d at 336) (finding that, where plaintiff's "believed" their fiduciary had acted contrary to duty, the statute of limitations began running even before subsequent discovery of additional actions; dismissing claim where it accrued at least three years and seven months prior to complaint).

Similarly, claims for conversion generally accrue "and the statute of limitations begins to run, when the unauthorized assumption and exercise of ownership occurs—not when the plaintiff discovers the conversion," even if the discovery is later. *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 83, 712 S.E.2d 221, 227 (2011) (noting that the time may also begin running upon a lawful possessor's failure to return items upon request). Further, claims arising from bailment relationships accrue, and the statute of limitations begins to run, once the bailor demands that the property be returned and the bailee refuses or fails to comply. *Koonce v. Perry*, 53 N.C. 58, 61 (1860). Failure to bring a claim within its applicable statute of limitations requires dismissal of that claim. *See, e.g., Ferro v. Volvo Penta of the Ams., LLC*, 731 F. App'x 208, 211 (4th Cir. 2018) (affirming dismissal of plaintiff's claims brought outside applicable statute of limitations).

Here, the Complaint reveals on its face that all of McDow's claims are asserted outside of their applicable statutes of limitations. First, McDow contends that, from and after the time he allegedly granted a general power of attorney to Holmes in January 2016, the Properties, Vehicles, and other items were titled in the name of Holmes herself or third parties other than McDow. Compl. ¶¶9-11. Thus, McDow knew, or should have known, *from the very beginning* that (1) he did not own the various items, and (2) the individuals in whose names they were titled would necessarily treat the items as their own and exercise rights of possession and ownership.[13]

---

[13] *See infra* section II(C) for a discussion of the law governing ownership and why McDow never, as a matter of law, had ownership of the Properties, Vehicles, fixtures, personal property, and other items at issue in the case, such that his claims fail as a matter of law on that basis.

Accordingly, McDow's claims for breach of fiduciary duty and conversion would have accrued no later than January 2016 when he knew that ownership was titled to third parties, granting them rights of ownership in and control over the property. For example, given that McDow contends that he had control over the Vehicles for "his exclusive use," third-party ownership and rights would necessarily be an act in conflict with McDow's purported ownership rights and with any alleged fiduciary obligations owed to oversee preservation of the property. *See Stratton*, 211 N.C. App. at 83, 712 S.E.2d at 227; *Salmony*, 228 N.C. App. 360, at *6, 748 S.E.2d 776, at *6.[14] Thus, the three-year statutes of limitations for both the breach of fiduciary duty and conversion claims necessarily would have expired in January 2019–long before McDow brought this suit. N.C. Gen. Stat. § 1-52(1) (fiduciary duty); N.C. Gen. Stat. § 1-52(4) (conversion).

Second, even if the claim did not begin running immediately with the purported power of attorney, it necessarily began when McDow was aware of the purported transfers at issue in July and August 2017. As McDow admits, he mailed Holmes a notice terminating the purported power of attorney and any associated fiduciary relationship on July 24, 2017, after learning of the purported facts giving rise to the 2018 Complaint and the Complaint in this case. Compl. ¶17; *see* Def.'s Ex. A (2018 Compl.), ¶17 (contending McDow "revoked" power of attorney). In August 2017, at the same time the parties' relationship ended, McDow further indicates he was informed and otherwise aware that Holmes had transferred or disposed of the Properties, Vehicles, and other "Inventory" and items identified in the Complaint. Compl. ¶¶8-11, 13-15. In fact, the Complaint

---

[14] Notably, McDow contends only that Holmes relinquished ownership of the Vehicles, despite acknowledging that most of the Vehicles were titled in the names of third parties other than Holmes; McDow pleads no facts suggesting how Holmes could have created (much less breached) a fiduciary duty or bailment or have converted property *as to McDow* by giving away property that, as a matter of law, belonged to individuals other than McDow. McDow necessarily lacks standing to assert claims for transfer of third parties' properties where he suffered no injury, and the Court likewise lacks subject matter jurisdiction for that reason. *See infra* section II(c)(i).

suggests that McDow was aware of *all* alleged transfers or dispositions at issue at that time, as McDow allegedly demanded in August 2017 that Holmes turn over to his mother any property "still in her possession," recognizing the alleged transfers had already occurred such that the property was not "still" in her possession. *See* Compl. ¶18. In turn, McDow contends that Holmes declined to turn over the property at his demand and, on September 11, 2017, refused to turn over the property to his mother unless he and his mother executed a written acknowledgement. *See* Compl. ¶18 & Exs. A (Browning Letter) & B (Acknowledgement).

Thus, McDow's breach of fiduciary duty claim accrued by July 24, 2017, when he sought to terminate the alleged power of attorney specifically because of the alleged circumstances giving rise to the Complaint. *See* Compl. ¶17; *see also* Def.'s Ex. A (2018 Compl.), ¶17 (contending McDow "revoked" power of attorney). Indeed, McDow undisputedly knew or should have been aware of sufficient facts forming the basis of his breach of fiduciary duty claim to accrue where he revoked or attempted to revoke the power of attorney at that time for that reason. *See Salmony*, 228 N.C. App. 360, at *6, 748 S.E.2d 776, at *6; N.C. Gen. Stat. § 1-52(1).

Third, even if McDow's claims did not accrue earlier, they all accrued no later than September 11, 2017, after (1) McDow allegedly demanded the return of the property at issue, and (2) Holmes allegedly failed to return the items. Compl. ¶18 & Compl. Ex. A (discussing letters of August 14, 2017, and August 17, 2017, and a call on September 6, 2017, about the subject matter of this dispute). At that point, McDow knew that some or all of the property at issue was not in Holmes' possession and had allegedly been transferred, Compl. ¶¶13-16, 18 (discussing knowledge of alleged transfer); had demanded that the alleged property be transferred or returned, Compl. ¶18 & Compl. Exs. A-B; and Holmes had allegedly refused to do so. Compl. ¶18 & Compl. Exs. A-B (alleging Holmes did not return or transfer property; containing letter with Holmes'

conditions on doing so). As a result, even assuming his claims had not accrued earlier, McDow was required to assert his claims–at the latest–by September 11, 2020. N.C. Gen. Stat. § 1-52(1), (4), (5). He failed to file the Complaint here until September 29, 2020. (Dkt. 1).

Fourth, because McDow failed to re-file the Complaint until September 29, 2020, approximately fifteen months after dismissing his 2018 Complaint on June 25, 2019, the refiling was outside the one-year period permitted under North Carolina law in certain circumstances for re-filing a dismissed complaint. N.C. R. Civ. P. 41(a). Rule 41(a) "'may not be used to manipulate the statute of limitations of claims that were already time-barred' when initially filed," *Ross v. Washington Mut. Bank*, 566 F. Supp. 2d 468, 485 (E.D.N.C. 2008) (citations omitted), and it applies *only* where a plaintiff timely refiles within a year. *See* N.C. R. Civ. P. 41(a).; *S.F. ex rel. J.F. v. Cabarrus Cty. Bd. of Educ.*, No. 1:12CV560, 2013 WL 4552639, at *10 (M.D.N.C. Aug. 28, 2013) (dismissing claim re-filed outside one-year window under N.C. R. Civ. P. 41(a)). Here, where McDow failed to refile his claims for more than fifteen months after filing a voluntary dismissal and where his claims are otherwise outside the applicable statutes of limitation, N.C. R. Civ. P. 41(a) is inapplicable and cannot resuscitate his claims.

Thus, because McDow failed to timely assert his claims, they are barred by the applicable statutes of limitations and should be dismissed.

### C. McDow Lacks Standing and Fails to State a Claim Upon Which Relief Can Be Granted, and the Court Lacks Subject Matter Jurisdiction, Where the Complaint Confirms McDow Did Not Own the Real and Personal Property at Issue

As noted above, even if McDow's claims are not otherwise barred for failure of process, failure of service, lack of personal jurisdiction, and failure to sue within the applicable statutes of limitations, the claims *all* still fail to state a claim as a matter of law where McDow's allegations confirm that he did not legally own the real or personal property at issue in the case. Thus, McDow

19

lacks standing to pursue claims as to the disputed property and otherwise fails to state a claim upon which relief can be granted, and the Court lacks subject matter jurisdiction.

i. Standards Governing Standing and McDow's Claims

Under federal jurisprudence, "the irreducible constitutional minimum of standing contains three elements": (1) a concrete, particularized, and actual or imminent injury in fact, (2) "a causal connection between the injury and the conduct complained of," and (3) a likelihood that the court can redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury must be "'an invasion of a legally protected interest…'" *Peterson v. Nat'l Telecommunications & Info. Admin.*, 478 F.3d 626, 631 (4th Cir. 2007). Where a complaint "'simply fails to allege facts upon which subject matter jurisdiction can be based,'" dismissal is appropriate for lack of standing. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citation omitted). Where a party lacks standing, the court lacks subject-matter jurisdiction under Rule 12(b)(1). *See generally id.*; *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 WL 3880667, at *12 (W.D.N.C. Sept. 5, 2017) (dismissal for lack of standing and lack of subject-matter jurisdiction).

In turn, in addition to basic standing jurisprudence, under North Carolina law, an essential element of *each* of McDow's claims in this case is that McDow must demonstrate that he was the true and rightful owner, and entitled to exclusive possession, of the property at issue:

- Conversion: "'Conversion' is defined as 'an unauthorized assumption and exercise of the right of ownership over Goods or Personal chattels *belonging to another*, to the alteration of their condition or the *exclusion of an owner's rights*.'" *McNeill v. Minter*, 12 N.C. App. 144, 145, 182 S.E.2d 647, 647-48 (1971) (citation omitted) (emphasis added) (noting also that "conversion applies only to goods and personal property and does not apply to real property").

- Bailment: "To constitute a bailment there must be a delivery by the bailor and acceptance by the bailee of the subject matter of the bailment. It must be placed in the bailee's possession, actual or constructive…. 'There must be such a full transfer, actual or constructive, of the property to the bailee *as to exclude the possession of the owner* and all other persons and give the bailee for the time being the sole custody and control thereof.'"

20

*Wells v. West*, 212 N.C. 656, 194 S.E. 313, 315 (1937) (citations omitted) (emphasis added); *Mid-S. Investments, LLC v. Statesville Flying Serv., Inc.*, No. 514CV00182RLVDSC, 2016 WL 3958721, at *8 (W.D.N.C. July 22, 2016) (delivery for bailment requires "relinquish[ing] exclusive possession, custody, and control to the bailee" (citation omitted)).

- Breach of Fiduciary Duty as to Disposition of Property: "To establish a claim for breach of a fiduciary duty, claimants are "required to produce evidence that (1) defendants owed them a fiduciary duty of care; (2) defendants ... violat[ed] ... their fiduciary duty; and (3) this breach of duty was a proximate cause of injury to plaintiffs." *French Broad Place, LLC v. Asheville Sav. Bank, S.S.B.*, 259 N.C. App. 769, 787, 816 S.E.2d 886, 899 (2018). Here, where McDow's fiduciary duty claim is premised entirely upon alleged disposition of the property at issue, Compl. ¶¶23-24, there necessarily can be no violation of a purported duty if McDow did not own the property.

In his Complaint, McDow raises claims as to four primary types of property: (1) real property (i.e., the Properties), (2) titled personal property (i.e., the Vehicles), (3) certain equipment and fixtures, and (4) other personal property, such as miscellaneous clothing, shoes, and jewelry. Compl. ¶¶9-11. In each instance of titled property and apparent fixtures, McDow's Complaint demonstrates that he lacks any cognizable interest, much less a legal interest, in the property at issue in this case. Absent ownership of the property at issue here, McDow's claims must fail because they fail to state a claim as a matter of law, because McDow lacks standing, and because the Court therefore lacks subject matter jurisdiction. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (a plaintiff "must assert his own legal interests rather than those of third parties"); *Peterson*, 478 F.3d at 633 (generally no standing to assert claims of third parties).

## ii. McDow Does Not Own the Properties or the Fixtures on Them

First, while McDow claims that Holmes "transferred" the Properties to McDow, he simultaneously admits that the Properties are titled in Holmes' name, as the "Title Name" for both Properties is "Marie Holmes." Compl. ¶9 (column entitled "Title Name").

Under North Carolina, to transfer title to real property, a deed *must* be delivered from the existing owner to the transferee with the express intention of delivering title to property. *Elliott v.*

*Goss*, 250 N.C. 185, 188–89, 108 S.E.2d 475, 478-79 (1959) ("Delivery is essential to the validity of a deed of conveyance. Both the delivery of the instrument and the intention to deliver it are necessary to a transmutation of title….'to constitute delivery there must be a parting with the possession of the deed and with all power and control over it by the grantor for the benefit of the grantee at the time of delivery…To constitute delivery the papers must be put out of possession of the maker.'"); *Vinson v. Smith*, 259 N.C. 95, 97, 130 S.E.2d 45, 47 (1963) (same; affirming no transfer of title). Individuals claiming to have obtained rights to property via "deeds of gift" must record those deeds within two years after the making thereof or the deed becomes void. N.C. Gen. Stat. § 47-26. Moreover, all contracts or agreements for the conveyance of real property must be reduced to writing and, if not, are not otherwise enforceable. N.C. Gen. Stat § 22-2.

Here, there is no allegation that Holmes deeded the Properties to McDow, that he obtained a gift deed that was properly recorded within two years, or that there was *any* writing of any kind to convey the Properties. Rather, McDow vaguely claims that Holmes gave or "transferred" the Properties to him. Compl. ¶9. There are no factual allegations supporting this contention; rather, the Complaint expressly contradicts the allegation, as McDow admits the Properties were titled and deeded in Holmes' name at all times, making her the record and legal owner of the Properties. Compl. ¶¶9-10; *see Elliott*, 250 N.C. at 188-89, 108 S.E.2d 478-79; *Vinson*, 259 N.C. at 97, 130 S.E.2d at 47. Where there is no allegation that Holmes ever executed any deed or other writing to convey the Property and no allegation that a deed has ever been recorded, but McDow instead admits that the Properties are titled to Holmes, McDow necessarily lacks any ownership interest in the Properties. *See Elliott*, 250 N.C. at 188-89, 108S.E.2d 478-79; *Vinson*, 259 N.C. at 97, 130 S.E.2d at 47. Absent an ownership interest, McDow's breach of fiduciary duty claim fails as to the Properties because Holmes could not have breached a fiduciary duty by transferring property that

McDow did not own. *See French Broad Place*, 259 N.C. App. at 787, 816 S.E.2d at 899. For the same reason, McDow lacks standing to assert any claim as to the Properties, as any injury resulting from the transfer would be to Holmes, as the record owner. *Gladstone*, 441 U.S. at 100; *Peterson*, 478 F.3d at 633.[15]

Further, because McDow does not own the Properties, he cannot own the fixtures on the Properties. Under North Carolina law, "[a] fixture has been defined as that which, though originally a movable chattel, is, by reason of its annexation to land, or association in the use of the land, regarded as part of the land, partaking of its character." *Hughes v. Young*, 115 N.C. App. 325, 328, 444 S.E.2d 248, 250 (1994). As a general rule, when personal property is affixed to the land, even if removable, it becomes a part of the land and property of the landowner. *See id.* at 329, 444 S.E.2d at 251. Here, among other things, McDow contends that certain "Vehicle Lifts," an "Auto Body Paint Machine," unidentified "Tools," and a "Diagnostic Computer" were installed on the M's Automotive property and titled in the name of Ethan Stanley. Compl. ¶ 9. Where McDow necessarily could not own the Properties, he also could have no ownership interest in the lifts and other materials that became fixtures after installation. *See Hughes*, 115 N.C. App. at 328, 444 S.E.2d at 250.

### iii. McDow Does Not Own the Vehicles

<u>Second</u>, while McDow also claims that Holmes wrongfully "transferred" the Vehicles, like the Properties, he simultaneously admits that the Vehicles are "titled in different names" other than

---

[15] McDow does not appear to assert his conversion or breach of bailment claims as to the Properties, *see* Compl. ¶¶27-36, but, to the extent the claims may be construed as against the Properties, they necessarily fail for the same reasons. Further, they fail because neither claim may be asserted as to real property as a matter of law. *McNeill*, 12 N.C. App. at 145, 182 S.E.2d 647, 647-48 (1971) ("conversion applies only to goods and personal property and does not apply to real property"); *Owens v. Kinsey*, 52 N.C. 245, 246 (1859) (bailment is of personal property); *State v. Blake*, 180 N.C. App. 475, 637 S.E.2d 308 (2006) ("A 'bailment' has traditionally been defined as '[a] delivery of goods or personal property…'" (citation omitted)).

his own, including those of Holmes and third parties. Compl. ¶10. Indeed, the Complaint indicates that the Vehicles are variously titled in the names of Marie Holmes, Damarius Simmons, Phillip Gause, Nicholas Griffin, and Ethan Stanley—not McDow. Compl. ¶9.

Under North Carolina law, to transfer title or any ownership interest in a motor vehicle, the owner generally must (1) execute, under oath, an assignment and warranty of title to the transferee, (2) deliver the motor vehicle to the transferee, and (3) deliver the certificate of title to the transferee as the new owner. N.C. Gen. Stat. § 20-72(b); *Batts v. Lumbermen's Mut. Cas. Ins. Co.*, 192 N.C. App. 533, 535, 665 S.E.2d 578, 580 (2008). This statute establishes the "specific, definite and comprehensive terms concerning the transfer of ownership of a motor vehicle," meaning that the process must be utilized to transfer title or ownership *Nationwide Mut. Ins. Co. v. Hayes*, 276 N.C. 620, 639, 174 S.E.2d 511, 523 (1970) (citing N.C. Gen. Stat. § 20-72). Under the statute, "[t]he words 'title' and 'ownership' are words that may be used interchangeably," meaning that the transfer of title is necessary to transfer ownership. *Id.* at 629-30, 74 S.E.2d at 517. Indeed, a party "has no title to" a motor vehicle merely by possession; rather, he must have title and the right to convey the vehicle. *Wilson v. Commercial Fin. Co.*, 239 N.C. 349, 356, 79 S.E.2d 908, 913 (1954) (citations omitted) (discussing transfers of vehicles and bona fide purchasers).

Here, McDow does not allege facts suggesting that any of these requirements were met for the Vehicles; to the contrary, he explicitly admits that title is vested in Holmes and other third parties, Compl. ¶¶9-10, such that ownership could not have been conveyed to him where a title must be assigned by a signed statement under oath and must be delivered to the transferee. N.C. Gen. Stat. § 20-72(b). Indeed, McDow's sole claim to "ownership" of the Vehicles is that Holmes "turn[ed] over the keys to the vehicles" to McDow. Compl. ¶10. Of course, "[t]urning over the keys" to a vehicle has no effect on ownership under North Carolina law; it is title that matters, and,

24

here, McDow expressly admits that the title to the Vehicles is in the names of their true registered owners—not McDow. Compl. ¶¶9-10.

Thus, absent any ownership interest in the Vehicles, all McDow's claims fail as to the Vehicles because Holmes could not have (1) converted Vehicles from McDow that he did not own, (2) accepted the Vehicles as part of a purported bailment where McDow had no right to relinquish the requisite exclusive possession, custody, and control to create a bailment initially, or (3) breached a fiduciary duty as to the Vehicles when McDow did not own them and thus had no reasonable expectation that Holmes would treat them as McDow's. *McNeill*, 12 N.C. App. at 145, 182 S.E.2d at 647-48 (conversion); *Wells*, 212 N.C. 656, 194 S.E. at 315 (bailment); *Mid-S. Investments*, 2016 WL 3958721, at *8 (bailment); *French Broad Place*, 259 N.C. App. at 787, 816 S.E.2d at 899 (fiduciary duty). Further, McDow lacks standing to assert any claim as to the Vehicles, as any injury resulting from the transfer would be to the titled owners, not McDow. *Gladstone*, 441 U.S. at 100; *Peterson*, 478 F.3d at 633.

### D. McDow's Complaint Fails to State a Claim as to McDow's Personal Property, Including Miscellaneous Personal Property, and Fails to Comply with Fed. R. Civ. P. 8(a)

In evaluating a Rule 12(b)(6) motion, "[t]he legal sufficiency of a complaint depends, in part, on whether it meets the standards for a pleading stated in Federal Rule of Civil Procedure 8…. Under Rule 8(a)(2), a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Campbell v. Wells Fargo Bank, N.A.*, 73 F. Supp. 3d 644, 647 (E.D.N.C. 2014) (quoting Fed. R. Civ. P. 8(a); other citations omitted). The purpose of Rule 8(a)(2) is "to ensure that the defendant has adequate notice of the nature of the claims against it." *Id.* (citation omitted). Thus, a court "'cannot ignore a clear failure to allege facts' that set forth a cognizable claim." *Id.* (citation omitted). Generally, "'[w]hat constitutes a short and

plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters.'" *Gould v. Bertie Cty.*, No. 5:14-CT-3066-FL, 2014 WL 3854076, at *2 (E.D.N.C. Aug. 5, 2014) (citation omitted) (dismissing claims where "plaintiff's filings [were] so confusing that the court [could not] put the matter into a manageable form to make the requisite determinations").

Here, McDow bases his three claims in large part upon Holmes' purported transfer of his "personal property," at times vaguely referring to unidentified shoes, clothing, and jewelry. Compl. ¶¶23-24, 28-31, 33-36. Generally, he points to "the items of personal property identified in the 'Inventory'" set out in the Complaint. *E.g.,* Compl. ¶31. In the "Inventory" in the Complaint, however, McDow assigns $100,000.00 of value to "Misc. Clothes & Jewelry" and $5,000 to unidentified "Tools." Compl. ¶9. McDow fails to plead any allegations regarding *what* the "Misc. Clothes & Jewelry" and "Tools" are and fails to describe them in any meaningful way. *See generally* Compl. As such, the Complaint fails to comply with basic notice pleading requirements and the requirements of Rule 8(a)(2) in that it fails to provide *any* notice to Holmes of (1) the items McDow contends are or were allegedly left in her possession, and (2) the items that McDow now contends to be in dispute in this case. *See Campbell*, 73 F. Supp. 3d at 647. Indeed, by its very nature and definition, a "miscellaneous" (or "Misc.") is a vague, non-specific catchall category that fails to provide any notice, while the reference to "Tools" lacks any specificity necessary to provide Holmes notice of what purported "Tools" are at issue. Thus, the Complaint fails to comply with Rule 8(a)(2) and fails to state a claim upon which relief can be granted as to any of McDow's three claims to the extent there are insufficient factual allegations to support claims of breach of fiduciary duty, conversion, or breach of bailment when the items at issue are not specified. *See*

*Gould*, 2014 WL 3854076, at *2.

Further, as noted above, on a motion to dismiss, courts do not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd.,* 591 F.3d at 255. Similarly, a court will not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Wahi*, 562 F.3d at 615 n.26. In the Complaint, McDow puzzlingly contends that "a family member *allegedly told* Mr. McDow that Ms. Holmes had given away his personal property (including his clothes)." Compl. ¶9 (emphasis added). While McDow presumably would or should know whether information was conveyed to him, not merely allegedly, the allegation epitomizes the concept of "bare assertions devoid of further factual enhancement," *Nemet Chevrolet, Ltd.,* 591 F.3d at 255, and "unwarranted inferences, unreasonable conclusions, or arguments." *Wahi*, 562 F.3d at 615 n.26. Indeed, as to the non-titled personal property, there are no factual allegations showing that Holmes actually gave it to McDow in the first place; rather, the Complaint is replete with McDow's conclusory allegations that she did so. *See generally* Compl.

Accordingly, where McDow's claims are wholly reliant on such ambiguous and conclusory allegations for all of the real and personal properties at issue,[16] they should be dismissed pursuant to Rule 12(b)(6).

### E.  McDow's Request for Punitive Damages Should Be Dismissed

Finally, McDow's request for punitive damages should be dismissed where the Complaint fails to state a claim upon which relief can be granted and otherwise fails to identify any facts supporting an award of punitive damages.

---

[16] This includes the Properties, Vehicles, fixtures, miscellaneous personal property, and even the limited items of personal property that McDow does identify - e.g., two Stihl weed eaters and a Stihl leaf blower. Compl. ¶9.

27

Under North Carolina law, punitive damages may be awarded only where a plaintiff proves compensatory damages are warranted *and* demonstrates the existence of fraud, malice, or willful or wanton conduct with respect to the conduct for which compensatory damages are awarded. N.C. Gen. Stat. § 1D-15(a); *Riggs v. Orkin, Inc.*, No. 7:11-CV-5-D, 2011 WL 2417016, at *4 (E.D.N.C. June 13, 2011) ("Punitive damages may only be awarded in cases involving fraud, malice, or willful or wanton conduct." (citations omitted)). The plaintiff bears the burden of meeting this standard by "clear and convincing evidence." *Id.* § 1D-15(b). "A demand for punitive damages shall be specifically stated, except for the amount, and the aggravating factor that supports the award of punitive damages shall be averred with particularity." N.C. R. Civ. P. 9(k). "[A] claim for punitive damages cannot survive as a separate cause of action" and may proceed only if an underlying, standalone claim supports punitive damages. *Anderson v. S. Health Partners, Inc.*, No. 4:20-CV-00095-M, 2020 WL 6326098, at *6 (E.D.N.C. Oct. 28, 2020);

Here, because McDow's claims should be dismissed for the reasons described above, his request for punitive damages must necessarily be dismissed as well. *Riggs*, 2011 WL 2417016, at *4 (no standalone claim or request for punitive damages). Further, while McDow conclusorily alleges that Holmes' alleged actions were in "disregard" of McDow's rights and "dereliction" of Holmes' alleged duties, Compl. ¶¶26, 36, he pleads no *facts* supporting a request for punitive damages. *See generally* Compl. Indeed, the Complaint does not identify any conduct that McDow contends to be fraudulent, malicious, willful, or wanton, and there are no allegations meeting the particularity requirement. *See generally* Compl.; N.C. Gen. Stat. § 1D-15(a); N.C. R. Civ. P. 9(k). Absent allegations sufficient to support his request, McDow's request for punitive damages should be dismissed.

## CONCLUSION

For the foregoing reasons, Holmes respectfully requests that the Court grant her motion and dismiss McDow's Complaint and related claims.

Respectfully submitted, this the 11th day of February, 2021.

**K&L GATES LLP**

*/s/ A. Lee Hogewood III*
A. Lee Hogewood III
North Carolina State Bar No. 17451
Matthew T. Houston
North Carolina State Bar No. 46130
Zachary S. Buckheit
North Carolina State Bar No. 55123
K&L Gates LLP
4350 Lassiter at North Hills Ave., Suite 300
Post Office Box 17047 (27619-7047)
Raleigh, North Carolina 27609
Telephone: (919) 743-7322
Facsimile: (919) 516-2122
E-mail: lee.hogewood@klgates.com
      matthew.houston@klgates.com
      zach.buckheit@klgates.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was filed electronically in accordance with the local rules and was therefore served electronically on those entities that have properly registered for such electronic service and was further served by depositing a copy in a depository of the United States Postal Service, first-class, postage prepaid, addressed as shown below:

Ira Braswell IV
Braswell Law, PLLC
P.O. Box 703
Louisburg, NC 27549
*Attorney for Plaintiff*

This the 11th day of February, 2021.

**K&L GATES LLP**

*/s/ A. Lee Hogewood III*
A. Lee Hogewood III
North Carolina State Bar No. 17451
Matthew T. Houston
North Carolina State Bar No. 46130
Zachary S. Buckheit
North Carolina State Bar No. 55123
K&L Gates LLP
4350 Lassiter at North Hills Ave., Suite 300
Post Office Box 17047 (27619-7047)
Raleigh, North Carolina 27609
Telephone: (919) 743-7322
Facsimile:  (919) 516-2122
E-mail: lee.hogewood@klgates.com
      matthew.houston@klgates.com
      zach.buckheit@klgates.com
*Counsel for Defendant*
