# EXHIBIT A

| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| BRUNSWICK COUNTY | FILE NO. 18-CVS- 1963 |

LAMARR ANDRE MCDOW,
    Plaintiff,

**COMPLAINT**
(With Jury Demand)

vs.

FONTELLA MARIE HOLMES,
    Defendant.

The plaintiff, Lamarr A. McDow, complaining of the defendant, alleges:

## I. PARTIES AND VENUE

1. The plaintiff, Lamarr Andre McDow ("Mr. McDow"), at all relevant times herein, was a resident and citizen of Shallotte, Brunswick County, North Carolina;

2. The defendant, Fontella Marie Holmes ("Ms. Holmes"), is a resident and citizen of Raleigh, Wake County, North Carolina and, at all times relevant to the claims herein, acting in a fiduciary capacity as Mr. McDow's designated agent under his Power of Attorney;

3. This complaint involves a breach of fiduciary duty by means of the improper disposal and conversion of several valuable assets entrusted to Ms. Holmes for safekeeping by Mr. McDow while acting as his agent under a Power of Attorney("POA"). The transactions constituting the claims herein transpired in Brunswick County, North Carolina;

## II. FACTUAL BASIS FOR RELIEF SOUGHT

4. Mr. McDow first met Ms. Holmes in 2012 while she was working at McDonald's and living with her mother and three (3) kids in a single-wide mobile home on Ruby Way, located in Shallotte, Brunswick County, North Carolina. Shortly thereafter, Mr. McDow and Ms. Holmes started dating;

5. Between 2012 and 2014, Ms. Holmes relocated several times, which included stays with her father's ("Elroy Holmes") then fiancé, Shane McNeil, and Laminda Gause, the sister of Leslie Gause, who is the mother of Elroy Holmes' second daughter, Paige Holmes. During this transitional period, Mr. McDow and Ms. Holmes continued dating, and eventually, their relationship produced two (2) daughters;

6. In November 2014, Mr. McDow was arrested by the Brunswick County Sheriff's Department for trafficking narcotics. Approximately two (2) months after Mr. McDow's arrest, Ms. Holmes won 188 million dollars ($188,000,000.00) in the Powerball lottery. After winning the Powerball lottery, Ms. Holmes elected to receive a lump sum payout of her lottery winnings totaling 127 million dollars ($127,000,000.00), which after taxes resulted in winnings totaling 88 million dollars ($88,000,000.00);

7. Shortly after winning the lottery, Ms. Holmes purchased 3055 Bouverie Street from Mr. Clifford Cheek ("Mr. Cheek") for Two-hundred and fifty thousand dollars ($250,000.00) where she resided with Mr. McDow for approximately a year before relocating due to the extreme media coverage surrounding the confluence of Ms. Holmes' lottery win and Mr. McDow's arrest;

8. On or about January 6, 2016, Mr. McDow and Ms. Holmes moved into the property located at 3852 Bill Holden Road SW, Shallotte, Brunswick County, North Carolina. While residing at this location; television host, Iyanla Vanzant ("Ms. Vanzant"), interviewed Ms. Holmes and Mr. McDow for an appearance on her television show, "Iyanla: Fix My Life." The episode featuring Ms. Holmes and Mr. McDow is entitled, "Lotto Drama," Season 4 Episode 405. During their interview, Ms. Holmes acknowledges purchasing several of the items listed in the inventory as gifts for Mr. McDow, including the real property located at 996 Whiteville Road NW, Shallotte, Brunswick County, North Carolina. This property ultimately became M's Automotive Center, and by Ms. Holmes' admission, "an automotive restoration business for Lamarr."

9. Between February 2015 and January 2016, Ms. Holmes purchased several substantial assets consisting of real and personal property and transferred them to Mr. McDow as gifts, these gifts included:

## INVENTORY OF PERSONAL AND REAL PROPERTY

| Gift Description | Place Purchased | Title Name | Purchase Price |
|---|---|---|---|
| 1966 Blk Chevy Chevelle | Coastal Collision Shop Shallotte, NC (Al Willis) | Damarius Simmons | $60,000.00 |
| 2015 Chevy Stingray (Modified by Late Model Race craft, Houston, Tx.) | Jud Kuhn Chevrolet Little River, SC 29566 | Marie Holmes | $250,000.00 |
| 2015 Chevy Duramax Truck (Silverado Diesel) | Clay Robinson Ethan Stanley | Phillip Gause | $80,000.00 |
| 1966 Blk Chevy Stepside Trk. | Classic Colors Paint & Body Shop Shallotte, NC | Damarius Simmons | $3,500.00 |
| Two (2) 2015 Peterbilt Dump Trucks (G+H Trucking) | Houston, Texas | Marie Holmes Nicholas Griffin | $125,000.00 |
| 2015 Yamaha Raptor Four-Wheeler | | Damarius Simmons | $7,500.00 |
| 2x Yamaha Banshee Four-Wheelers | | Damarius Simmons | $20,000.00 |
| Toro Zero Turn Lawnmower (60 in. Deck) | Milligan Power & Lawn Equipment Shallotte, NC | Marie Holmes | $11,000.00 |
| 2x Stihl Weedeaters | Milligan Power & Lawn Equipment Shallotte, NC | Marie Holmes | $500.00 |
| Stihl Leaf Blower | Milligan Power & Lawn Equipment Shallotte, NC | Marie Holmes | $200.00 |
| Misc. Clothes & Jewelry | Left w/ Ms. Holmes | | $100,000.00 |

- 3 -

### Property Removed from M's Automotive

| | | |
|---|---|---|
| Diagnostic Computer | Ethan Stanley | $12,000.00 |
| Vehicle Lifts | Ethan Stanley | $40,000.00 |
| 2003 Chevy Box Work Van | Ethan Stanley | $3,500.00 |
| 2015 Dodge Tow Truck | Ethan Stanley | $40,000.00 |
| Auto Body Paint Machine | Ethan Stanley | $15,000.00 |
| Tools | Ethan Stanley | $5,000.00 |

### REAL PROPERTY

| | | | |
|---|---|---|---|
| M's Automotive<br>996 Whiteville Road NW<br>Shallotte, NC 28470 | Ray Fitzgerald<br>Ethan Stanley<br>Pete Sellars | Marie Holmes | $600,000.00 |
| Seventy-seven (77) Acres<br>Ashe, NC | Ray Fitzgerald | Marie Holmes | $80,000.00 |

10. There are witnesses that personally assisted Ms. Holmes' with purchasing the above-referenced items and observed her deliver them to Mr. McDow as gifts. Although the automobiles and trucks listed above were titled in different names, there were witnesses, including the title holders that were present when Ms. Holmes gave up all of her ownership and control of the purchased vehicles by immediately turning over the vehicles' keys to the acquired vehicles to Mr. McDow for his exclusive use.

11. In January 2016, in anticipation of his impending incarceration, Mr. McDow executed a general Power-of-Attorney naming Ms. Holmes, his then-fiancée, as his agent. As Mr. McDow's agent, Ms. Holmes was a fiduciary concerning matters within the scope of her agency. Mr. McDow authorized Ms. Holmes to store, maintain, and protect his real and personal property during his incarceration.

12. Between February 2016 and May 2017, Ms. Holmes and Mr. McDow stayed in contact with each other using letters, telephone calls or visitations. During this time, Ms. Holmes also gave birth to their second child.

- 4 -

13. In May 2017, Ms. Holmes and Mr. McDow broke off their relationship, but still maintained sporadic contact via mail concerning their daughter. Eventually, contact between Ms. Holmes and Mr. McDow lessened, and he soon learned from a friend that Ms. Holmes started dating Mr. Jeffrey Baker ("Mr. Baker"), a former acquaintance of Mr. McDow.

14. Shortly after learning Ms. Holmes was dating Mr. Baker, Mr. McDow was told by a family member that Ms. Holmes had given away all his personal property (including his clothes), sold the seventy-seven acres (77) acres in Ash, NC she gave him for opening a dirt bike (motorcycle) and ATV track, and closed his auto restoration business, M's Automotive. Each unauthorized gift, conveyance, or transfer of Mr. McDow's real or personal property was without his knowledge or consent and consideration attributed to Mr. McDow.

15. Ms. Holmes gave several items of McDow's personal property to her brother, Phillip Gause ("Mr. Gause"), including but not limited to, Mr. McDow's 2015 Chevy Silverado Diesel Duramax Truck, valued at $80,000.00. Furthermore, Mr. Gause took possession of said property knowing the same belonged to Mr. McDow.

16. At all times relevant to the transactions alleged herein, defendant Holmes was acting in her capacity as Mr. McDow's agent, and therefore, acted as a fiduciary with an obligation to act in the best interests of Mr. McDow. Ms. Holmes failed to act openly, fairly and honestly by secretly giving away all of the items identified as Mr. McDow's personal property in the "Inventory" to others without disclosing any of the transactions to Mr. McDow. Moreover, gifts of the principal's property are presumed to be adverse to the principal's interest.

17. Ms. Holmes' unconditional obligation to act in the best interests of Mr. McDow didn't stop because Ms. Holmes and Mr. McDow's relationship ended. Ms. Holmes never renounced her agency under Mr. McDow's POA. Finally, Mr. McDow never granted Ms. Holmes individually, or in her capacity as a fiduciary, the specific authority to make gifts of his property. Mr. McDow revoked Ms. Holmes' power-of-attorney on July 24, 2017.

## III. CLAIMS FOR RELIEF

### COUNT I

**Breach of Fiduciary Duty**

18. The Plaintiffs incorporate by reference hereto paragraphs one (1) through seventeen (17) of this Complaint as fully set forth below in this **COUNT I**.

19. At all times relevant to this Complaint, the Defendant, Fontella Marie Holmes, as Mr. McDow's agent enjoyed a relationship of trust and confidence with the Plaintiff. As Mr. McDow's agent, Ms. Holmes failed to "'act in good faith and with due regard to Mr. McDow's interests.'" Ms. Holmes' duties included an obligation to exercise good judgment in safeguarding Mr. McDow's personal and real property, to discharge her responsibilities in good faith, to act in the best interests of Mr. McDow, and to put the interests of Mr. McDow before her own.

20. The Defendant breached her duties of care, loyalty and good faith by, among other things, illegally exercising a right of ownership over Mr. McDow's personal property and giving all of the items identified as his personal property in the "Inventory" to others without disclosing any of the transactions to Mr. McDow. The defendant gave away all Mr. McDow's personal property (including his clothes); sold the seventy-seven acres (77) acres in Ash, NC she purchased for Mr. McDow to open a dirt bike (motorcycle) and ATV track, and closed Mr. McDow's auto restoration business, M's Automotive, while the business was still making a profit. Each unauthorized gift, conveyance, or transfer of Mr. McDow's real or personal property was without his knowledge or consent and consideration attributed to Mr. McDow. The unauthorized transactions denied the Plaintiff of any current or future beneficial use of assets of substantial value. By agreeing to act as Mr. McDow's agent under a general power-of-attorney, the defendant placed herself in a relationship of trust and confidence with the Plaintiff and is, by law, a fiduciary. The Defendant's actions, as set out hereinabove show that the Defendant secretly made

unauthorized gifts of the principal's property that were adverse to the principal's interest, in that, the transactions occurred without consideration ceding to Mr. McDow

21. While acting as Mr. McDow's agent under a general POA, the defendant broke North Carolina law by unlawfully disposing of personal property belonging to Mr. McDow after accepting it for safekeeping. The defendant's actions created a detriment to the Plaintiff and constituted a breach of fiduciary duty.

22. The requirement that the Defendant sought to benefit wrongly from the transaction is not an element of this claim which is what differentiates breach of fiduciary duty from constructive fraud *Clay v. Monroe*, 189 N C. App. 482 (2008), White, NC. App. at 294.

23. As a direct cause of the Defendant's breach of her fiduciary duties, the Plaintiff makes her liable for restitution, reliance and compensatory damages. Furthermore, the actions of the Defendant were intentional and made in careless and reckless disregard of the rights of the Plaintiff and in dereliction of her duties and warrant the imposition of punitive damages. Therefore, the Plaintiff demands damages against the Defendant in a sum in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT II

### Conversion

24. The Plaintiff incorporates by reference hereto paragraphs one (1) through twenty-three (23) of this Complaint as fully set forth below in this **COUNT II**.

25. At all times relevant to the claims herein, until the time Ms. Holmes came into possession of Mr. McDow's personal property, the plaintiff was the lawful owner and was entitled to immediate possession by himself or his designee.

26. In September 2017, Mr. McDow signed an "acknowledgment" authorizing Ms. Holmes' transfer of all of the plaintiff's clothes and shoes to his mother, Sara Webb ("Ms.

- 7 -

Webb"); however, the agreed upon transfer never occurred. (*See* Exhibits A & B) Eventually, Mr. McDow learned that his clothes and shoes were being worn by Mr. Baker.

27. Until Ms. Holmes came into possession of the items of personal property listed in the "Inventory," Mr. McDow, by accepting the transfer of the listed items as gifts from Ms. Holmes, was the legal owner of same and entitled to their immediate possession by himself or his designee. By intentionally giving away all Mr. McDow's personal property (including his clothes) to others without his knowledge or consent, the defendant converted Mr. McDow's personal property to her own use and illegally exercised a right of ownership over personal property belonging to another.

28. The Defendant converted the items of personal property identified in the "Inventory" belonging to Mr. McDow to her own use, and therefore, is liable for damages in a sum in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT III

### Breach of Bailment

29. The Plaintiff incorporates by reference hereto paragraphs one (1) through twenty-eight (28) of this Complaint as fully set forth below in this **COUNT III**.

30. In April 2016, shortly before being incarcerated, Mr. McDow delivered possession of the items identified as his personal property in the "Inventory" to Ms. Holmes, and she accepted custody of Mr. McDow's personal property for safekeeping during his incarceration. Upon accepting custody of Mr. McDow's personal property, she had exclusive possession and control over said items and created a bailment.

31. The defendant accepted custody of Mr. McDow's personal property for safekeeping, while also acting as his agent under a pre-existing POA, and as this was the case, owed Mr. McDow a special duty of care to protect his property from damage or loss.

32. As a fiduciary and a bailee, Ms. Holmes owed Mr. McDow an elevated duty to either account for, or return Mr. McDow's personal property to him upon the completion of his term of incarceration and subsequent reclamation of his property.

33. By secretly giving away all of the items identified as Mr. McDow's personal property in the "Inventory" to others without disclosing any of the transactions to Mr. McDow, Ms. Holmes, as a fiduciary and bailee to Mr. McDow, intentionally violated her special duty to safeguard Mr. McDow's personal property during his incarceration. Therefore, the plaintiff makes her liable for restitution, reliance and compensatory damages. Furthermore, the actions of the Defendant were intentional and made in total disregard of the rights of the plaintiff and in dereliction of her duties and warrant the imposition of punitive damages. Therefore, the plaintiff demands damages against the defendant in a sum in excess of Twenty-Five Thousand Dollars ($25,000.00).

## IV. JURY DEMAND

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

## V. PRAYER FOR RELIEF

**THEREFORE**, Mr. McDow prays that the Court:

1. *Award Mr. McDow compensatory damages from the defendant in an amount in excess of $25,000.00;*

2. *Award Mr. McDow punitive damages from the defendant in an amount in excess of $25,000.00;*

3. *Tax interest as permitted by law;*

4. *Award Mr. McDow reasonable attorney's fees against the defendant as permitted by law;*

5. *Award Mr. McDow other costs incurred in maintaining this action; and*

6. *Award such other and further relief as is fair and equitable.*

**RESPECTFULLY SUBMITTED** this 19th day of October 2018.

*Ira Braswell IV*
Ira Braswell IV
*Attorney for Lamarr Andre McDow*
BRASWELL LAW, PLLC
P.O. Box 703
Louisburg, NC 27549
Telephone: (252) 458-2203
Facsimile: (980) 225-0132 NC
State Bar No. 41799

CHRIS G. BROWNING JR.
919.835.4127 telephone
919.835.4101 facsimile
chris.browning@troutmansanders.com

**TROUTMAN SANDERS**

TROUTMAN SANDERS LLP
Attorneys at Law
434 Fayetteville Street
Suite 1900
Raleigh, North Carolina 27601
919.835.4100 telephone
troutmansanders.com

September 11, 2017

By Fax and U.S. Mail
Ira Braswell
Brawell Law
P.O. Box 703
Louisburg, NC 27549

Re: *McDow v. Holmes*

Dear Mr. Braswell

This letter is in follow-up to my letter of Aug. 17, 2017 and my call to you on Sept. 6, 2017. In light of your letter of Aug. 14, 2017, Ms. Holmes is no longer willing to store Mr. McDow's clothes and shoes at her home as a courtesy and accommodation to him. When I spoke with you to discuss transporting these items to your office, you indicated that you also did not wish to store these items for Mr. McDow. You suggested that Ms. Holmes consider turning these items over to Sara Webb, Mr. McDow's mother.

During our call, I informed you that I would discuss this with Ms. Holmes. I also noted that we would need a written statement from Mr. McDow and Ms. Webb regarding the transfer of Mr. McDow's clothes and shoes. Ms. Holmes would be fine with sending these items to Ms. Webb. An authorization to transfer Mr. McDow's items to Ms. Webb is attached. Please have this executed and returned to me right away. Again, Ms. Holmes has no desire to continue to store Mr. McDow's clothes at her expense. If we do not receive the attached acknowledgement by Sept. 29, we will proceed with shipping these items to your office.

Many thanks for your assistance.

TROUTMAN SANDERS LLP

Chris G. Browning, Jr.

cc: Sara Ash, Esq.

ATLANTA   BEIJING   CHARLOTTE   CHICAGO   HONG KONG   NEW YORK   ORANGE COUNTY   PORTLAND
RALEIGH   RICHMOND   SAN DIEGO   SHANGHAI   TYSONS CORNER   VIRGINIA BEACH   WASHINGTON, DC

**EXHIBIT A**

## ACKNOWLEDGEMENT

WHEREAS, Marie Holmes, as a courtesy and accommodation to Lamarr McDow, allowed him to keep certain personal property (primarily clothes and shoes) at Ms. Holmes' house while Mr. McDow was incarcerated at the North Carolina Department of Correction;

WHEREAS, Lamarr McDow desires to transfer the possession of these items to his mother, Sara Webb;

WHEREAS, Sara Webb agrees to take possession of these items;

NOW THEREFORE, Lamarr McDow hereby expressly recognizes, agrees and consents to his personal property being transferred from Ms. Holmes to Ms. Webb;

Ms. Webb agrees to accept possession of these items;

Mr. McDow recognizes and agrees that Ms. Holmes shall have no responsibility or liability in connection with any item of personal property that Ms. Holmes transfers to Ms. Webb, and Mr. McDow agrees to release and hold Ms. Holmes harmless in connection with any personal property that is transferred by Ms. Holmes to Ms. Webb.

Lamarr McDow and Sara Webb have set forth their hand and seal to this Acknowledgement with the intention of executing a sealed instrument.

*Lamarr McDow* (Seal)
Lamarr McDow
Date: 9/27/17

*Sarah Webb* (Seal)
Sara Webb
Date: 11/01/17

**EXHIBIT B**